Sam Sciume and Ida Sciume v. Commissioner.
Sciume v. Commissioner
Docket No. 58119.
United States Tax Court
T.C. Memo 1958-15; 1958 Tax Ct. Memo LEXIS 216; 17 T.C.M. (CCH) 74; T.C.M. (RIA) 58015; January 31, 1958
*216 Morris M. Grupp, Esq., Mills Tower Building, San Francisco, Calif., and Leon Schiller, Esq., for the petitioners. Nat F. Richardson, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $198.31 in the petitioners' income tax for 1951. Issues presented by the pleadings involve the correctness of the respondent's action in disallowing deductions, totaling $1,380.28, taken by petitioners for contributions, interest, taxes, union dues, income tax service, depreciation of an automobile and automobile casualty insurance. As a result of stipulations by the parties, the only issues remaining for determination are the correctness of the respondent's action in disallowing the deductions taken for depreciation of automobile, automobile casualty insurance and California sales tax. Findings of Fact Some of the facts have been stipulated and are found accordingly. The petitioners are, and during 1951 were, husband and wife with residence at Comptche, California. They filed their joint Federal income tax return with the collector for the first district of California. Since Ida Sciume is joined here *217 only by virtue of such joint return, the term "petitioner" will hereinafter be used with reference to Sam Sciume. During the latter part of 1949 or the first part of 1950 the petitioner entered the employ of Donald C. Philbrick, Comptche, California, to work at Philbrick's lumber mill which was situated 5 miles from Comptche and which was reached by travel over a logging road. In his employment the petitioner worked primarily as a trimmer. However, he performed other work on occasions when other employees were absent from their work at the mill or when Philbrick did not have an employee for a particular job at the mill. In the fall of 1950 the automobile which the petitioner then owned "wasn't in too good a shape" and he traded it for a new 1950 model Buick automobile which he acquired at a cost of $2,655. One purpose for which petitioner acquired the Buick was to use it in traveling to and from his work at Philbrick's lumber mill and following acquisition of it he used it for that purpose. During the first part of 1951, and while petitioner was still working at Philbrick's lumber mill, a vacancy occurred in the job of yarder operator at the mill. Since petitioner had had experience *218 in operating a yarder of the same type as that used at the mill, he applied to Philbrick for the job and Philbrick gave it to him. The job required the petitioner to arrive at the mill earlier in the morning and remain there later in the afternoon than he had done in previous work at the mill. Often during the fall and winter seasons the petitioner did not get away from the mill until after sundown. The job also required the petitioner to work at the mill 6 days a week. In working at the job of yarder operator the petitioner continued to use his Buick automobile to travel between his home and his work. There was no public transportation available between the petitioner's home and the lumber mill. Nor were any living accommodations for petitioner and his family available at the mill or nearer thereto than Comptche. The stores in Comptche carried only a limited type of groceries and sold no bread, eggs, meats or milk. As a result of the petitioner's use of the automobile to travel to and from work, it was necessary for his wife to travel with friends to the shopping centers at Mendocino and Fort Bragg, which were 16 miles and 30 miles, respectively, distant from Comptche, in order *219 to do the family shopping. Almost every Sunday in 1951 the petitioner and his wife drove in his antomobile to points on the Pacific coast from 16 to 56 miles distant from Comptche to fish. Also on some Sunday nights they drove in the automobile to Fort Bragg or other places to picture shows. During his vacation in 1951 the petitioner drove his automobile approximately 1,500 miles on a trip through northern California. In their income tax return for 1951 the petitioners took, among others, the following deductions: Depreciation of automobile (3-year life)
$882.00
Casualty insurance on automobile
214.36
California sales tax
74.50
In determining the deficiency the respondent disallowed the foregoing deductions. During 1951 the petitioner paid $91.86 for casualty insurance on his Buick automobile and paid California sales tax in the amount of $74.50. Opinion The petitioners take the position that petitioner was required by the terms of his employment as yarder operator to use his automobile to travel between his home and his work, that such use of his automobile constituted its use in the petitioner's trade or business and caused a portion of the depreciation *220 of the automobile and a portion of the cost of the casualty insurance on the automobile (the amounts of such portions to be determined from the record) to be properly deductible as ordinary and necessary expenses of the petitioner's trade or business. The respondent takes the position that the entire amounts of the depreciation and cost of casualty insurance represented personal expenses of the petitioner and as such were not deductible. The evidence shows that in his employment as yarder operator the petitioner was not required to transport between his home and the mill any tools or equipment. Nor is there anything to indicate that he used his automobile in any way in his work at the mill. Further, there is nothing in the record to indicate that Philbrick furnished to any of his employees, either at the mill or elsewhere, transportation between their homes and their places of employment. Apparently transportation was something that each of them had to provide for himself. Although the petitioner testified that, during the conversation in which he gave petitioner the job of yarder operator, Philbrick stated that he "would like" for the job "a man that he could depend on, that had *221 his own transportation," we fail to find from that testimony or from anything else in the record that Philbrick conditioned the employment of the petitioner upon the use by the latter of his automobile to travel between his home and the lumber mill. So far as we are able to determine, it was understood by both petitioner and Philbrick when petitioner asked for the job that whoever got it would be required to provide his own transportation between his home and the mill, just as other employees who worked at the mill were apparently required to do. In this connection it is observed that at the time the petitioner sought the yarder operator job he had been employed at Philbrick's mill for about a year or more, during which time he had shown his reliability; that petitioner was experienced in the operation of a yarder of the type used at the mill; that he had an automobile which he had been using for the past several months to travel between his home and the mill; and that no contention is made here that such use of the automobile was required of the petitioner. In our opinion the deductions here sought represented expenses incurred by petitioner in the use of his automobile to travel *222 or commute between his home and his work. Such expenses are personal and are not deductible, irrespective of the distance commuted, and irrespective of the fact that public transportation was not available and that living accommodations for the petitioner and his family were not available at or near the petitioner's place of employment. Charles Crowther, 28 T.C. 1293. Consequently, the respondent is sustained in disallowing the deductions taken for depreciation of automobile and for casualty insurance. Since we have found that during 1951 the petitioner paid California sales tax of $74.50, we hold for the petitioners on this issue. In their petition the petitioners have assigned certain errors and made certain allegations of fact, all of which the respondent has denied in his answer, and on brief have advanced certain contentions challenging the propriety of the administrative policy and procedures employed by the respondent prior to his determination of the deficiency here involved and challenging the propriety of his motives in making such determination. We have jurisdiction to consider and determine, and have considered and determined in the light of the evidence *223 of record, the correctness of the respondent's determination of the deficiency here involved. However, we are without jurisdiction to consider and determine the propriety of the administrative policy and procedures the respondent employed prior to making such determination or to consider and determine the propriety of his motives in making such determination. Charles Crowther, supra.
Decision will be entered under Rule 50.